# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>    *v.*<br><br>Ernesto Castro,<br>    *Defendant.* | Case. No.: 25-252 (M) |

### MOTION FOR IMMEDIATE RELEASE WITH CONDITIONS

TO THE HONORABLE COURT:

Defendant Ernesto Castro ("Mr. Castro"), through counsel, respectfully moves this Court for immediate release. Release is appropriate here for two reasons: *First*, Defendant objects to the holding of a detention hearing pursuant to § 3142(e), because no such hearing is authorized under § 3142(f). The government has failed to meet its burden to show a serious risk of flight under § 3142(f)(2)(A), or otherwise show that any of the other § 3142(f) criteria have been met. *Second*, even if a § 3142(e) hearing were authorized, Defendant requests immediate release because the government cannot meet its burden to show that there are "no condition or combination of conditions [that] will reasonable assure [Defendant's] appearance." 18 U.S.C. § 3142(e).

### ARGUMENT

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act ("BRA") provides those limited exceptions. These exceptions are codified in various statutes, including 18 U.S.C. §§ 3142(f), and (e). These provisions

prescribe detention only in specific circumstances. Because the government has not met its burden to show detention is justified under any of these statutory provisions, Mr. Castro should be released.

I. **Because the government fails to show a serious risk of flight under § 3142(f)(2)(A), it is not entitled to a § 3142(e) bond hearing, and Defendant should be released immediately.**

   a. **The government must show a serious risk of flight by the preponderance of the evidence.**

"[Section] 3142(f) does not authorize a [§ 3142(e)] detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings" to cases where one of the § 3142(f) criteria have been met. *United States v. Ploof*, 851 F.2d 7, 10 (1st Cir. 1988); *see also Salerno*, 481 U.S. at 747 ("detention hearings [are] available if" one of the 3142(f) criteria are met). Here, the government has only invoked § 3142(f)(2)(A) as a basis for detention, which requires showing "a serious risk that [defendant] will flee." The government must make that showing by the preponderance of the evidence. *See United States v. Gottesfeld*, 319 F. Supp. 3d 548, 564 (D. Mass. 2018) (applying preponderance standard to § 3142(f)(2)(A)). And as the First Circuit made clear in *Ploof*, this Court must expressly find one of the criteria of § 3142(f) has been met before it proceeds to hold a hearing under § 3142(e). 851 F.2d at 10-11. *See also* 18 U.S.C. § 3142(e) (stating a determination under that section occurs "after a hearing pursuant to the provisions of subsection (f) of this section").[1]

---

[1] Courts of appeal have uniformly found § 3142(f) must be triggered before district courts proceed to hold a § 3142(e) detention hearing. *See United States v. Friedman*, 837 F.2d 48, 48-49 (2d Cir. 1988); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *United States v.*

### b. A finding of serious risk of flight is appropriate only in extreme and unusual circumstances.

Ordinary "risk of flight" is not a factor in § 3142(f). By its plain language, § 3142(f)(2)(A) permits detention and a hearing only when there is a "*serious* risk that [the defendant] will flee." (emphasis added). There is some risk of nonappearance and potentially some risk of flight in every criminal case; "serious risk" of flight means something more. *See United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) (recognizing that "serious flight risk" is "narrower" than "flight risk" and is "distinct from 'risk of non-appearance'"). According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretative canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citation omitted)).

The BRA's legislative history makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances." *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases[.] [T]hose [types] involving … a serious risk that the defendant will flee .. reflect the scope of current case law that recognizes the appropriateness of denial of release in

---

*Twine,* 344 F.3d 987 (9th Cir. 2003); *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999).

such cases." (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "rare case of extreme and unusual circumstances ... justifies pretrial detention"—as representing the "current case law")). The government must therefore demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual.

Courts have articulated the elements of this heightened standard in different ways, but the upshot remains the same—defendants are "serious" flight risks in only rare cases. *See United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant."); *see also United States v. Runsdorf*, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) (finding that the government must establish "a *heightened* likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense" (emphasis added)).

The only defendants who qualify for detention under § 3142(f)(2)(A) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. *See White*, 2021 WL 2155441, at *7 (holding that a "case involves a 'serious risk of flight,' as opposed to a mere risk of nonappearance, if it involves a serious risk that the defendant intentionally will avoid court proceedings"). Risk of flight is not the same as risk of nonappearance, *see White*, 2021 WL 2155441, at *10, and a defendant should never be detained as a "serious risk" of flight when the risk of flight or nonappearance can be mitigated by conditions of release.

### c. The government has failed to meet it burden to show serious risk of flight here.

#### i. Defendant's history and circumstances evince no serious risk of flight.

Mr. Castro has strong ties to the Canóvanas community where he resides and is not a serious risk of flight. His U.S. citizen uncle, Julio Santos, and his U.S. citizen aunt, Andrea Rosa are like parents to him, and have supported Mr. Castro financially and emotionally. They have expressed a willingness to take him in for the pendency of these proceedings and support him during the process. Prior to his arrest, Mr. Castro worked in construction. Counsel was able to verify this information in a phone call with Ms. Rosa prior to this hearing.

Moreover, it is counsel's understanding that Mr. Castro has no failures to appear, complied with law enforcement during his arrest, and has never shown any other intent to flee from law enforcement. Additionally, counsel understands Mr. Castro has no criminal history, and the criminal complaint and accompanying affidavit lists none.

#### ii. Empirical evidence further undermines the government's case.

The government's own data prove that judges can release more people without risking higher rates of crime and flight. In this case, this Court should be guided by AO statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new crimes on bond. *See* AO Table H-15 (Sept. 30, 2022) archived at https://perma.cc/LYG4-AX4H

(showing a nationwide appearance rate of 99% and non-rearrest rate of 98%). Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates. *See* Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 25 fig. 4 (2022), https://freedomdenied.law.uchicago.edu/report. Even in districts that release two-thirds of all federal defendants on bond, just 1% fail to appear in court and 1% are rearrested while released. *Id.* The below chart reflects shows the same vanishingly low failure to appear and rearrest rates based on AO data spanning 2007 to 2021.



*See* Siegler, *Freedom Denied* at 25 fig. 4.

In addition, as the federal Probation and Pretrial Services Office recently highlighted, release rates rose slightly during the pandemic but failure-to-appear and rearrest rates did not increase. *Id.* at 246 n.42. Release rates increased from 25% in 2019 to 36% in 2021 but "the rates at which people on pretrial release failed to appear in court or were rearrested remained extremely low." *Id.*

The AO bond statistics for this district likewise strongly suggest that Defendant should be released. In this district, released federal defendants appeared for court over 99% of the time in 2021. *See* AO Table H-15 (Sept. 30, 2022) archived at https://perma.cc/LYG4-AX4H (showing only 3 failure to appear violations out of 1,069 cases). Yet despite the statistically low risk of flight that Defendant poses, the government recommends detention in 71% of cases nationwide and in over 90% of cases in this district. *See* AO Table H-3 (Sept. 30, 2022) archived at https://perma.cc/5P82-ACXB. Clearly the government's detention requests are not tailored to the low risk of flight and recidivism that defendants in this district and elsewhere pose.

Defendant must be released because the government has not presented evidence that shows that he would be among the approximately 1% of defendants who fail to appear in court or are rearrested on bond, let alone that there is "a serious risk that the defendant intentionally will avoid court proceedings." *White*, 2021 WL 2155441, at *7. Detaining Defendant without evidence that he poses a "serious risk" of flight violates their constitutionally protected liberty interest.

***

The Court should therefore order Defendant's release without a § 3142(e) hearing, because Defendant presents no serious risk of flight.

II. **Even if Defendant is a "serious risk of flight" under § 3142(f)(2)(A), the government fails to show that conditions would not reasonably assure Defendant's appearance under § 3142(e).**

Even if the Court finds the government has shown a serious risk of flight, the government has not shown that there are "no condition or combination of conditions [that] will reasonable assure [Defendant's] appearance." 18 U.S.C. § 3142(e). Any concerns the Court may have local nonappearance can be allayed by imposing any number of conditions of release that have been shown empirically to reduce the risk of local nonappearance. For example, a study conducted in New York state courts found that text message reminders were able to reduce failures to appear by up to 26%, translating to 3,700 fewer arrest warrants per year. *See* Brice Cooke et al, *Text Message Reminders Decreased Failure to Appear in Court in New York City*, Abdul Latif Poverty Action Lab (2017), archived at https://perma.cc/JCW7-JVZW. Holistic pre-trial services focused on providing social services and *support* to clients also reduce the risk of non-appearance across all risk levels in state systems. *See generally* Christopher Lowenkamp and Marie VanNostrand, *Exploring the Impact of Supervision on Pretrial Outcomes*, John and Laura Arnold Foundation, Special Report (2013), archived at https://perma.cc/R3F3-KZ76.

Moreover, scholars and courts agree that electronic monitoring is especially effective at reducing risk of flight, although it is also particularly constricting of liberty, and consequently may only be imposed under the BRA if it is the *least* restrictive condition necessary to "reasonably assure" appearance and community safety. *See, e.g.*, Samuel R. Wiseman, *Pretrial Detention and the Right to the*

*Monitored*, 123 Yale L. J. 1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he question of finding other ways of ensuring a non-dangerous defendant's presence at trial is one not of ability, but of will. . . ."); *id.* at 1368–74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the defendant and the government); *United States v. O'Brien*, 895 F.2d 810, 814–16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone [] arguably rebuts the presumption of flight"). *But see also* Siegler, *Freedom Denied* at 185 (finding through interviews with stakeholders that electronic monitoring is overused despite the possibility of less punitive alternatives and can impose a "high pecuniary burden for arrestees").

## CONCLUSION

Because there is no basis to detain Mr. Castro, he should be released immediately to live with his uncle Julio and his wife, Andrea, who can act as a third-party custodians, if needed. These conditions will "reasonably assure" Mr. Castro's appearance. 18 U.S.C. § 3142(c).

For these reasons, Mr. Castro respectfully requests that he be released with conditions this Court deems appropriate, under §§ 3142(a)–(c). Because the government has provided no permissible basis for pretrial detention under §§ 3142(f), continuing to detain Mr. Castro violates the law. Alternatively, pursuant to § 3142(e), the government has failed to show that reasonable conditions would not reasonably assure Mr. Castro's appearance in future proceedings.

**WHEREFORE,** it is respectfully requested that the Court order Defendant's release on conditions.

**RESPECTFULLY SUBMITTED.**   March 18, 2025.

**RACHEL BRILL**
Federal Public Defender
District of Puerto Rico

s/**CELSO JAVIER PEREZ CARBALLO**\*
Assistant Federal Public Defender
USDC-PR No. G04110
241 F.D. Roosevelt Ave.
San Juan, P.R. 00918-2441
Tel. (787) 281-4922, Fax (787) 281-4899
E-mail: Celso_Perez@fd.org

**\*CERTIFICATION:** I ECF-filed this motion, notifying all parties of record.